UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

CIVIL ACTION NO. 4:05CV-14-H

DR. PHILIP C. TROVER						PLAINTIFF

V.

DR. NEIL J. KLUGER and
PAXTON MEDIA GROUP, LLC					DEFENDANTS

**MEMORANDUM OPINION**

Defendant Paxton Media Group, LLC ("Paxton"), has moved to dismiss Plaintiff's claims for punitive damages. KRS § 411.051 prohibits the recovery of punitive damages "for publication of a defamatory statement in a newspaper, magazine or periodical," unless the plaintiff demands a correction and the publisher fails to make a conspicuous publication of that correction. Paxton says that it is entitled to dismissal of the punitive damage claims because it has complied with the statute by publishing Plaintiff's version of the facts in the newspaper. Plaintiff responds that Paxton's publication was neither a correction nor conspicuous.

This motion raises several difficult issues of fact and law which the Court discussed with counsel during a conference. For the reasons stated in the following Memorandum, the Court concludes that Paxton is not entitled to dismissal of Plaintiff's punitive damage claims.

I.

For purposes of the pending motion, the following facts are relevant. During March 2004, the Madisonville Messenger (the "Messenger"), a newspaper owned by Paxton, published

seven articles concerning Plaintiff's work at the Regional Medical Center. Several of the articles began on the front page of the newspaper and continued to interior pages. Plaintiff alleges that the articles were maliciously false. At this point, the Court need not consider the validity of the underlying charges in this case.

KRS § 411.051 is designed to provide newspapers an opportunity to avoid liability for punitive damages in connection with allegedly defamatory publications. The statute sets forth a procedure that applies to punitive damage claims arising from all defamation, false light, invasion of privacy or related claims. The statute, in pertinent part reads:

> (1) In any action for damages for the publication of a defamatory statement in a newspaper, magazine, or periodical, the defendant shall be liable for actual damages sustained by plaintiff. The defendant may plead the publication of a correction in mitigation of damages. Punitive damages may be recovered only if the plaintiff shall allege and prove publication with legal malice and that the newspaper, magazine, or periodical failed to make conspicuous and timely publication of a correction after receiving a sufficient demand for correction.
>
> (2) A "sufficient demand for correction" is a demand for correction which is in writing; which is signed by the plaintiff or his duly-authorized attorney or agent; which specifies the statement or statements claimed to be false and defamatory, states wherein they are false, and sets forth the facts; and which is delivered to the defendant prior to the commencement of the action.
>
> (3) A "correction" is either: (a) The publication of an acknowledgment that the statement or statements specified as false and defamatory in the plaintiff's demand for correction are erroneous; or (b) The publication, in a fair and impartial manner as a matter of law, of the plaintiff's statement of the facts (as set forth in his demand for correction) or a fair summary thereof, exclusive of any portions thereof which are defamatory of another, obscene, or otherwise improper for publication. If the demand for correction has specified two (2) or more statements as false and defamatory, the correction may deal with some of such statements pursuant to (a) above and with other of such statements pursuant to

> (b) above.
>
> (4) A "conspicuous publication" in a newspaper is a publication which is printed in substantially as conspicuous a manner as the statement or statements specified as false and defamatory in the demand for correction.

Almost a year later, on January 17, 2005, Plaintiff's attorney sent Paxton a letter demanding a correction of the false statements contained in the articles, as is required under KRS § 411.051. The letter contained a lengthy rebuttal of all the alleged untruths contained in the articles. On January 19, 2005, the Messenger published in full the demand letter containing the rebuttal. On the front page the Messenger alerted readers to Plaintiff's disagreement with its earlier articles, reiterated its confidence in the original stories and summarized the stories in several sentences. It referred the reader to the continuation on an inside page, where the demand letter was reprinted in its entirety, covering two full newspaper pages.

Paxton argues that it has complied with all of the relevant requirements of KRS § 411.051. Specifically, Paxton says that it has published a "correction" as defined in the statute and that it has published it in "substantially as conspicuous" a manner as the original articles, as is also required under the statute.

## II.

Subsequent to a sufficient demand, a defendant must publish an appropriate correction as defined in the statute. Plaintiff presented Paxton with a lengthy and comprehensive refutation and demand for correction. The plain wording of KRS § 411.051(3)(b) requires "publication, in a fair and impartial manner as a matter of law, of the plaintiff's statement of the facts (as set forth in his demand for correction) . . . ." As applied here, that requirement is unambiguous. Paxton published the complete and unedited "demand for correction" that Plaintiff properly

delivered prior to the commencement of this action. Based upon Plaintiff's demand, the statute requires no more in these circumstances. The Court agrees with Paxton that its publication of Plaintiff's complete statement of facts containing his reasons for disagreement with the articles complies as a matter of law with the requirement of KRS § 411.051(3)(b).

Plaintiff argues, nevertheless, that by repeating the allegations and by reasserting its belief in their truth, Defendant has failed to comply with the statute. The Court does not agree. KRS § 411.051 sets a precondition upon any punitive damage claims. Those preconditions do not prohibit Defendant from continuing to assert the truth of its article. It may avoid punitive damages, however, by printing Plaintiff's version of the story. The purpose of the statute is to allow a newspaper to publish articles and at the same time avoid exposure to punitive damages. If Defendant could not continue to publish or reaffirm its belief in the original story, should that be its position, the statute would accomplish precisely the opposite of its purposes.

Finally, Plaintiff argues that the publication of the retraction does not comply with the statute because it (1) only appeared once, rather than six times, and (2) did not appear in a timely fashion. The Court can easily determine that the publication was timely. Moreover, the Court finds no requirement that the frequency of the correction match the number of articles originally published. Paxton need only publish a correction upon demand. Here, Plaintiff could have made such a demand after each article and decided not to do so. Based on a single demand, the single response is appropriate.

### III.

Finally, Paxton argues that it has published its correction "in substantially as conspicuous a manner as the statement or statements specified as false or defamatory . . . ."

KRS § 411.051(4). Plaintiff argues that the publication is inadequate because it was not sufficiently conspicuous on the front page. Before the Court can address the conspicuousness of the correction itself, it must decide whether that determination is a matter of law for the Court to decide or a matter of fact to be decided by the jury. No Kentucky court has considered this question. In the absence of a controlling decision from Kentucky courts, this Court's task is to attempt to predict how the state courts would rule on this issue. *Hines v. Joy Mfg. Co.*, 850 F.2d 1146, 1150 (6th Cir. 1988).

A.

Subsections (3) and (4) of KRS § 411.051 contain slightly different operative language. KRS § 411.051(3) specifies that a publication must be "fair and impartial as a matter of law." This language suggests an intent to remove the issue from jury consideration. The Court would decide it based upon the facts and law. KRS § 411.051(4) contains different, less instructive language. It says simply that a correction must be printed in "substantially as conspicuous a manner as the statement or statements specified as false and defamatory in the demand for correction." The plain words of subsection (4), therefore, do not evince an intent by the legislature to remove the question of conspicuousness from the province of the jury.

The differences in language are significant enough to suggest a difference in meaning and legislative intent. The Court has considered the reasonable meaning of the statutory language and the reasonableness of various interpretations. The Court recognizes a certain ambiguity in the legislative intent as to KRS §§ 411.051(3) and (4). However, an interpretation allowing different standards of review for the questions of "fairness" under KRS § 411.051(3) and "conspicuousness" under KRS § 411.051(4) is not without a sound policy rationale. The

5

determination of conspicuousness seems to be an innately subjective one, comparing one publication to another. On the other hand, complying with the requirement of printing a requested correction seems more objective and more subject to judicial determination.

Other courts that have examined the sufficiency of a correction under similar statutes have reached the same conclusion. For example, in *Twin Coast Newspapers, Inc. v. Superior Court*, 208 Cal. App. 3d 656 (1989), the court held that whether a newspaper's retraction was "substantially as conspicuous" as the original allegedly defamatory statement is a question of fact for the jury. Indeed, the *Twin Coast* court stated that it is difficult to imagine that the determination of "whether one newspaper article was substantially as conspicuous as another could be characterized as a question of law." *Id.* at 662. *See also Pierce v. San Jose Mercury News*, 214 Cal. App. 3d 1626, 1631 (1989) (question of conspicuousness of correction is one for the jury); *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 10 (1986) (conspicuousness of retraction is question for the jury); *Nevada Ind. Broadcasting Corp. v. Allen*, 99 Nev. 404, 416 (1983) (sufficiency of a retraction is question for the jury); *Knoxville Pub. Co. v. Taylor*, 31 Tenn. App. 368, 375 (1948). The Court finds the *Twin Coast* reasoning persuasive.

The Court is satisfied that its interpretation accounts for the different language that the legislature selected and also produces a sensible result. For these reasons and in the absence of controlling case law specifying otherwise, the Court concludes that Kentucky courts would hold that the decision of whether a correction is "substantially as conspicuous" under KRS § 411.051 should remain with the jury, unless the Court can decide it as a matter of summary judgment. This interpretation should not prevent the fair application of subsection (4) protecting publishers from punitive damage claims.

B.

Although the Court has determined that the matter of conspicuousness under KRS § 411.051(4) is an issue of fact, to be determined by the jury, the Court must still weigh the available evidence under a summary judgment standard. If the evidence is so one-sided that a reasonable jury could not find for Plaintiff, then Paxton should prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). A dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. at 248. The available evidence regarding the conspicuousness of Paxton's publication of Plaintiff's demand letter is not so persuasive as to require the conclusion that the publication was conspicuous within the meaning of KRS § 411.051(4). A reasonable jury could determine that Paxton's publication was not "substantially as conspicuous" as the original articles regarding Plaintiff.

Several of the articles at issue were front-page stories with large headlines. Although Paxton alerted readers to Plaintiff's demand for correction on the front page of the newspaper, it did so in a relatively small box that pointed readers to the full publication of Plaintiff's demand letter on the inner pages of the paper. Reasonable persons might disagree as to the conspicuousness of the publication. Accordingly, the question will be submitted to the jury with the instruction that, if the jury finds that Paxton's publication of the demand letter is "substantially as conspicuous" as the original articles, there can be no award of punitive damages.[1] Should the jury determine that the publication was *not* substantially as conspicuous,

---

[1] The findings of the jury on the element of conspicuousness under KRS § 411.051 will also apply to any punitive damages Plaintiff may seek in connection with claims for false light, interference with existing and prospective business relationships, and outrage. *See Gray v. Central Bank & Trust Co.*, 562 S.W.2d 656, 658 (Ky. App. 1978) ("[a]ny privilege conferred by statute applies equally to actions founded upon defamation and to actions founded upon the tort of interference with prospective economic relations."); *White v. Manchester Enter.*, 871 F.Supp. 934, 938 (E.D. Ky. 1994) (plaintiff's failure to file

the publication may be used as evidence by both parties on the question of actual malice.

The Court will enter an order consistent with this Memorandum Opinion. At a later time the Court will consider the jury instructions necessary to effectuate the order.

cc:     Counsel of Record

---

demand for retraction barred demand for punitive damages on both defamation and false light claims).